DAVID J. SCHWENDIMAN, United States Attorney (#2889)
STEWART C. WALZ, Assistant United States Attorney (#3374)
LESLIE J. HENDRICKSON, Special Assistant United States Attorney
185 South State Street, #400
Salt Lake City, Utah   84111
Telephone: (801) 524-5682
Facsimile:  (801) 524-6924
**Attorneys for the United States of America**



IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | **2:98CR 0278S** |
| Plaintiff, | : | |
| vs. | : | INDICTMENT<br>Vio. 15 U.S.C. § 78m, 17 C.F.R. § 240.13b2-2; 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. § 78ff, and 18 U.S.C. §§ 2(a) and (b), Failure to Disclose to an Accountant and Securities Fraud. |
| ROBERT G. WEEKS and<br>DAVID A. HESTERMAN,<br>Defendants. | :<br><br>: | |

The Grand Jury charges:

### COUNT I

1.  PanWorld Minerals International, Inc., (PanWorld) was a company whose stock was publicly traded during all times material to this Indictment.

2.  The defendant ROBERT G. WEEKS was the president and principal executive officer of PanWorld during all times material to this Indictment.

3.  The defendant DAVID A. HESTERMAN was represented as a consultant to PanWorld at all times material to this Indictment. According to PanWorld, the defendant

1

HESTERMAN consulted on management, financial, capitalization, securities and other matters. The defendant HESTERMAN was convicted of two counts of securities fraud on or about June 22, 1984.

4. At the conclusion of the calendar year 1992, PanWorld was required to obtain audited financial statements for inclusion in its 1992 annual report to the Securities and Exchange Commission (SEC). This annual report is a Form 10-K. The defendant WEEKS signed this report as the principal executive officer of PanWorld.

5. The officers and directors of PanWorld were required to report all material transactions and information occurring in 1992 to the accountant auditing PanWorld's financial statements for 1992.

6. PanWorld, through its subsidiary, Andes Minerals Recovery Chile, Ltd.(Andes), owned the Las Rosas mine. During 1992, each of the defendants HESTERMAN and WEEKS were told by a mining engineer residing in Santiago, Chile, that the Las Rosas mine, a mining property included in the financial statements of PanWorld at $3,473,000, had no mineral reserves, that a valuation report of the mining property obtained by PanWorld was incorrect and misleading, that Las Rosas could not be mined profitably based on current mining material containing copper of two percent or less, and that in order to conduct an appropriate exploration program to determine the mineral potential of Los Rosas, PanWorld would have to spend approximately $1,000,000.

7. Even though the information given to the defendants WEEKS and HESTERMAN by the mining engineer was material to the valuation of the Las Roses assets contained in PanWorld's financial statements, the defendants did not disclose that information to the

accountant conducting the audit of PanWorld's financial statements for the year 1992.

8. When PanWorld, through Andes, purchased the Las Rosas mining property, the original purchase price for the property was cash payments of $600,000. PanWorld included the Las Rosas mine at a value of $600,000 on its financial statements filed with its quarterly report for September 1990 Form 10-Q. Later, the defendants WEEKS and HESTERMAN modified the agreement and increased the purchase price by including 3,000,000 shares of preferred PanWorld stock. PanWorld arbitrarily and fraudulently valued the preferred stock at $1.00 per share, which resulted in an increase in the value of the Las Rosas property to $3,600,000.

9. The defendants WEEKS and HESTERMAN did not disclose that the original purchase price was $600,000 to the accountant conducting the audit of PanWorld's financial statements for the year 1992.

10. PanWorld listed the value of Las Rosas at the reduced amount of $3,473,000 on the financial statements included in the December 31, 1992 Form 10-K filed with the SEC. The reduced value was based on attributing a portion of the cash payments to interest.

11. In connection with the purchase of the Las Rosas property, the defendants WEEKS and HESTERMAN knew that PanWorld did not deliver the preferred stock discussed above in paragraph 8. to the sellers of the property. The defendants WEEKS and HESTERMAN did not disclose that information to the accountant conducting the audit of PanWorld's financial statements for the year 1992.

12. During 1990 PanWorld, through Andes, purchased the Europa Mill to process copper ore from the Las Rosas and other mines. However, PanWorld failed to make the required payments for the Europa Mill. The sellers of the Europa Mill sued PanWorld in Chile and

obtained a court decision revoking the agreement and returning the Europa Mill to the sellers. On or about December 24, 1992 the Europa Mill was repossessed by the sellers.

13.  Even though the information about the repossession of the Europa Mill was material, the defendants WEEKS and HESTERMAN did not disclose that information to the accountant conducting the audit of PanWorld's financial statements for the year 1992.

14.  On or about May 28, 1993, in the Central Division of the District of Utah, the defendants

> ROBERT G. WEEKS and
> DAVID A. HESTERMAN

did willfully, directly and indirectly, omit to state, did aid, abet, counsel, command, induce and procure each other to omit to state, and caused other persons to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which statements were made, not misleading to an accountant in connection with the audit and examination of financial statements of PanWorld Minerals International, Inc., and in connection with the preparation and filing of a Form 10-K of PanWorld Minerals International, Inc., said material facts being the information given to the defendants by the mining engineer, the original purchase price of the Las Rosas mining property, and the failure of PanWorld Minerals International, Inc., to deliver the preferred stock; all in violation of 17 C.F.R. § 240.13b2-2, promulgated under 15 U.S.C. § 78m, in violation of 15 U.S.C. § 78ff, and 18 U.S.C. § § 2(a) and (b).

### COUNT II

1.      The Grand Jury realleges and incorporates paragraphs 1. through 13. of Count I of this Indictment as though fully set forth herein.

2.      In its 1992 annual report on Form 10-K, PanWorld made disclosures about the Las Rosas mining property discussed in the immediately preceding Count. PanWorld also included the Las Rosas property in its financial statements for the year 1992 at a value of $3,473,000. Because of the defendants WEEKS' and HESTERMAN's failures to disclose material facts to the accountant conducting the audit of PanWorld's financial statements for the year 1992, the financial statements for PanWorld for the year 1992 included in PanWorld's Form 10-K were false and misleading.

3.      The 1992 Form 10-K also discusses a report by Ronald Atwood on the Las Rosas property dated January 21, 1991, and states that report may be in error in its reporting of reserves on the property. The discussion of the property contains the following statement:

> While Dr. Atwood's report is encouraging,, [sic] and has provided the Company (PanWorld) a basis on which to proceed, the Company does not yet have sufficient supporting data from drilling and other exploration methods to determine with assurtey [sic] that Las Rosas is a viable mine that can be operated profitably.

4.      The statement in the immediately preceding paragraph is misleading in that it omits to disclose that PanWorld, and the defendants WEEKS and HESTERMAN had discussions with the mining engineer referred to in the preceding count, which information indicated that PanWorld did not have reserves on Las Rosas and could not operate the Las Rosas property profitably on recovering copper ore of 2 percent or less.

5.      The text of the 1992 Form 10-K discloses that PanWorld is a defendant in a lawsuit by the sellers of the Europa Mill and that the company will not be adversely affected by

this action. PanWorld included the value of the Europa Mill at $133,000 on the financial statements filed with the 1992 Form 10-K. Defendants WEEKS and HESTERMAN omitted to disclose the material fact that the Europa Mill was repossessed during December 1992.

6. Beginning on or about May 9, 1989 with formation of PanWorld, the defendant HESTERMAN exercised substantial control over the affairs of PanWorld. The defendant HESTERMAN negotiated the acquisition of properties and other agreements, sold stock and directed the sale of stock of the company and directed that the proceeds from such sales be provided to the company, made business decisions for the company, participated in the drafting of periodic reports with the SEC, participated in hiring and other personnel decisions, and had discussions with individuals and firms involved in selling and marketing the stock of the company. In performing these functions, the defendant HESTERMAN exercised authority over individuals who were named officers and directors of PanWorld.

7. The defendant HESTERMAN's title with PanWorld was "consultant." In fact, the defendant HESTERMAN exercised control and decision-making authority within PanWorld sufficient so that the failure to disclose his true role in the 1992 Form 10-K and the other periodic reports of the company was the omission of a material fact. Furthermore, in light of the defendant HESTERMAN's role with the company, the failure to report the defendant HESTERMAN's prior conviction on two counts of securities fraud was the omission of a material fact.

8. The 1992 Form 10-K for PanWorld was filed with the SEC on or about June 1, 1993, and was thereafter supplied to shareholders of PanWorld and to broker-dealers and registered representatives actively engaged in the sale of PanWorld stock.

9.   On or about June 1, 1993, in the Central Division of the District of Utah, the defendants

> ROBERT G. WEEKS and
> DAVID A. HESTERMAN

did willfully, directly and indirectly, and did aid, abet, counsel, command, induce and procure each other, by use of means and instrumentalities of interstate commerce and of the mails, (1) employ a device, scheme, and artifice to defraud; (2) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in acts, practices, and courses of business which would operate and did operate as a fraud and deceit upon any person in connection with the purchase and sale of a security, that is the common stock of PanWorld Minerals International, Inc.; in that the defendants, in the 1992 Form 10-K for PanWorld Minerals International, Inc., did omit to state material facts about the viability, operating costs and mineral reserves of Las Rosas mining property, did make untrue statements about the value of Las Rosas mining property, misrepresented the current status of the Europa Mill, and did omit to disclose the true role of the defendant HESTERMAN with the company and the defendant HESTERMAN's felony convictions; all in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-f, 15 U.S.C. § 78ff, and 18 U.S.C. § 2(a).

## COUNT III

1.   On or about March 3, 1993, the defendant WEEKS signed an agreement to acquire one-half of the assets of a placer mining project in Montana known as Washington Gulch. The purchase price called for in the agreement was $5,555,000 consisting of: cash

7

payments of $350,000, 2,500,000 shares of PanWorld preferred stock valued at $2.00 per share, 500,000 shares of restricted common stock and assumption of some liabilities. The preferred stock was arbitrarily and fraudulently valued by PanWorld at $2.00 per share.

2.  The agreement signed by the defendant WEEKS on behalf of PanWorld required a closing on or before March 30, 1993. By that time, certain documents were to be prepared, PanWorld stock was to be transferred to the sellers, and the liabilities to be assumed by PanWorld were to be calculated.

3.  The March 30, 1993 closing did not take place, title to the Washington Gulch assets never passed to PanWorld, and the conditions required to be met by March 30 were not accomplished. Discussions on that point were carried on between the attorney for the sellers and the defendant HESTERMAN, among others. As a result, on or about April 2, 1993, counsel for the sellers wrote a letter to the defendant WEEKS, stating that it was the position of the sellers that the agreement of March 3, 1993 was void, in part because there had never been a "meeting of the minds" regarding a term or terms of the March 3 agreement.

4.  The defendant WEEKS did not show the April 2, 1993 letter, which addressed to him taking the position that the March 3, 1993 agreement was void, to the accountant who prepared the unaudited financial statements included by PanWorld in its March 31, 1993 quarterly report to the SEC, the March 31, 1993 Form 10-Q.

5.  The financial statements included in PanWorld's March 31, 1993 Form 10-Q contained the Washington Gulch property/assets as an asset at $5,500,000. The defendant WEEKS signed the March 31, 1993 Form 10-Q as president of PanWorld.

6.  Title to the properties/assets that PanWorld agreed to purchase in the March 3,

1993 agreement never passed to PanWorld because there was never a closing of the transaction. Furthermore, the sellers communicated to the defendant WEEKS that it was the sellers' position that the March 3 agreement was void. Therefore, it was fraudulent for PanWorld to include the Washington Gulch property/assets as an asset on the company's financial statements, even though there was a disclosure in the notes to the financial statements that there was a dispute about the sale.

7. The March 31, 1993 Form 10-Q for PanWorld was filed with the SEC on or about June 6, 1993, and was thereafter supplied to shareholders of PanWorld and to broker-dealers and registered representatives actively engaged in the sale of PanWorld stock.

8. On or about June 6, 1993, in the Central Division of the District of Utah, the defendants

> ROBERT G. WEEKS and
> DAVID A. HESTERMAN

did willfully, directly and indirectly, and did aid, abet, counsel, command, induce and procure each other, by use of means and instrumentalities of interstate commerce and of the mails, (1) employ a device, scheme, and artifice to defraud; (2) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in acts, practices, and courses of business which would operate and did operate as a fraud and deceit upon any person in connection with the purchase and sale of a security, that is the common stock of PanWorld Minerals International, Inc.; in that the defendants did state in the March 31, 1993 Form 10-Q for PanWorld Minerals International, Inc., that the company had acquired the

Washington Gulch property/assets for a cost of $5,500,000, which the defendants did then and there well know was not true and correct; all in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. § 78ff, and 18 U.S.C. § 2(a).

A TRUE BILL:

*[signature]*

FOREPERSON OF THE GRAND JURY

APPROVED:

DAVID J. SCHWENDIMAN
United States Attorney

*[signature]*

STEWART C. WALZ
Assistant United States Attorney