

STEPHEN J. SORENSEN, First Assistant United States Attorney (#3049)
STEWART C. WALZ, Assistant United States Attorney (#3374)
LESLIE J. HENDRICKSON, Special Assistant United States Attorney
185 South State Street, #400
Salt Lake City, Utah   84111
Telephone: (801) 524-5682
Facsimile:  (801) 524-6924
**Attorneys for the United States of America**

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 2:98CR 0278S |
| Plaintiff, | : | SUPERCEDING INDICTMENT |
| vs. | : | Vio. 15 U.S.C. § 78m, 17 C.F.R. § 240.13b2-2; 15 U.S.C. § 78j(b), 17 |
| ROBERT G. WEEKS, DAVID A. HESTERMAN AND | : | C.F.R. § 240.10b-5, 15 U.S.C. § 78ff, 18 U.S.C. § 1001 and 18 |
| TERRENCE DUNNE, | : | U.S.C. §§ 2(a) and (b), Failure to Disclose to an Accountant, Securities |
| Defendants. | : | Fraud, And False Statement. |

---

The Grand Jury charges:

## COUNT I

1.    PanWorld Minerals International, Inc., (PanWorld) was a company whose stock was publicly traded during all times material to this Indictment.

2.    The defendant ROBERT G. WEEKS was the president and principal executive officer of PanWorld during all times material to this Indictment.

3.    The defendant DAVID A. HESTERMAN was represented as a consultant to

1

PanWorld at all times material to this Indictment.  According to PanWorld, the defendant

HESTERMAN consulted on management, financial, capitalization, securities and other matters.

The defendant HESTERMAN was convicted of two counts of securities fraud on or about June

22, 1984.

       4.       At the conclusion of the calendar year 1992, PanWorld was required to obtain

audited financial statements for inclusion in its 1992 annual report to the Securities and

Exchange Commission (SEC).  This annual report is a Form 10-K.  The defendant WEEKS

signed this report as the principal executive officer of PanWorld.

       5.       The officers and directors of PanWorld were required to report all material

transactions and information occurring in 1992 to the accountant auditing PanWorld's financial

statements for 1992.

       6.       PanWorld, through its subsidiary, Andes Minerals Recovery Chile, Ltd.(Andes),

owned the Las Rosas mine.  During 1992, each of the defendants HESTERMAN and WEEKS

were told by a mining engineer residing in Santiago, Chile, that the Las Rosas mine, a mining

property included in the financial statements of PanWorld at $3,473,000, had no mineral

reserves, that a valuation report of the mining property obtained by PanWorld was incorrect and

misleading, that Las Rosas could not be mined profitably based on current mining material

containing copper of two percent or less, and that in order to conduct an appropriate exploration

program to determine the mineral potential of Los Rosas, PanWorld would have to spend

approximately $1,000,000.

       7.       Even though the information given to the defendants WEEKS and HESTERMAN

by the mining engineer was material to the valuation of the Las Roses assets contained in

2

PanWorld's financial statements, the defendants did not disclose that information to the accountant conducting the audit of PanWorld's financial statements for the year 1992.

8.      When PanWorld, through Andes, purchased the Las Rosas mining property, the original purchase price for the property was cash payments of $600,000. PanWorld included the Las Rosas mine at a value of $600,000 on its financial statements filed with its quarterly report for September 1990 Form 10-Q. Later, the defendants WEEKS and HESTERMAN modified the agreement and increased the purchase price by including 3,000,000 shares of preferred PanWorld stock. PanWorld arbitrarily and fraudulently valued the preferred stock at $1.00 per share, which resulted in an increase in the value of the Las Rosas property to $3,600,000.

9.      The defendants WEEKS and HESTERMAN did not disclose that the original purchase price was $600,000 to the accountant conducting the audit of PanWorld's financial statements for the year 1992.

10.     PanWorld listed the value of Las Rosas at the reduced amount of $3,473,000 on the financial statements included in the December 31, 1992 Form 10-K filed with the SEC. The reduced value was based on attributing a portion of the cash payments to interest.

11.     In connection with the purchase of the Las Rosas property, the defendants WEEKS and HESTERMAN knew that PanWorld did not deliver the preferred stock discussed above in paragraph 8. to the sellers of the property. The defendants WEEKS and HESTERMAN did not disclose that information to the accountant conducting the audit of PanWorld's financial statements for the year 1992.

12.     During 1990 PanWorld, through Andes, purchased the Europa Mill to process copper ore from the Las Rosas and other mines. However, PanWorld failed to make the required

3

payments for the Europa Mill. The sellers of the Europa Mill sued PanWorld in Chile and obtained a court decision revoking the agreement and returning the Europa Mill to the sellers. On or about December 24, 1992 the Europa Mill was repossessed by the sellers.

13.    Even though the information about the repossession of the Europa Mill was material, the defendants WEEKS and HESTERMAN did not disclose that information to the accountant conducting the audit of PanWorld's financial statements for the year 1992.

14.    On or about May 28, 1993, in the Central Division of the District of Utah, the defendants

ROBERT G. WEEKS and
DAVID A. HESTERMAN

did willfully, directly and indirectly, omit to state, did aid, abet, counsel, command, induce and procure each other to omit to state, and caused other persons to omit to state material facts necessary in order to make the statements made, in light of the circumstances under which statements were made, not misleading to an accountant in connection with the audit and examination of financial statements of PanWorld Minerals International, Inc., and in connection with the preparation and filing of a Form 10-K of PanWorld Minerals International, Inc., said material facts being the information given to the defendants by the mining engineer, the original purchase price of the Las Rosas mining property, and the failure of PanWorld Minerals International, Inc., to deliver the preferred stock; all in violation of 17 C.F.R. § 240.13b2-2, promulgated under 15 U.S.C. § 78m, in violation of 15 U.S.C. § 78ff, and 18 U.S.C. § § 2(a) and (b).

4

## COUNT II

1.    The Grand Jury realleges and incorporates paragraphs 1. through 13. of Count I of this Indictment as though fully set forth herein.

2.    In its 1992 annual report on Form 10-K, PanWorld made disclosures about the Las Rosas mining property discussed in the immediately preceding Count. PanWorld also included the Las Rosas property in its financial statements for the year 1992 at a value of $3,473,000. Because of the defendants WEEKS' and HESTERMAN's failures to disclose material facts to the accountant conducting the audit of PanWorld's financial statements for the year 1992, the financial statements for PanWorld for the year 1992 included in PanWorld's Form 10-K were false and misleading.

3.    The 1992 Form 10-K also discusses a report by Ronald Atwood on the Las Rosas property dated January 21, 1991, and states that report may be in error in its reporting of reserves on the property. The discussion of the property contains the following statement:

> While Dr. Atwood's report is encouraging,, [sic] and has provided the Company (PanWorld) a basis on which to proceed, the Company does not yet have sufficient supporting data from drilling and other exploration methods to determine with assurtey [sic] that Las Rosas is a viable mine that can be operated profitably.

4.    The statement in the immediately preceding paragraph is misleading in that it omits to disclose that PanWorld, and the defendants WEEKS and HESTERMAN had discussions with the mining engineer referred to in the preceding count, which information indicated that PanWorld did not have reserves on Las Rosas and could not operate the Las Rosas property profitably on recovering copper ore of 2 percent or less.

5.    The text of the 1992 Form 10-K discloses that PanWorld is a defendant in a

5

lawsuit by the sellers of the Europa Mill and that the company will not be adversely affected by this action. PanWorld included the value of the Europa Mill at $133,000 on the financial statements filed with the 1992 Form 10-K. Defendants WEEKS and HESTERMAN omitted to disclose the material fact that the Europa Mill was repossessed during December 1992.

6.    Beginning on or about May 9, 1989 with formation of PanWorld, the defendant HESTERMAN exercised substantial control over the affairs of PanWorld. The defendant HESTERMAN negotiated the acquisition of properties and other agreements, sold stock and directed the sale of stock of the company and directed that the proceeds from such sales be provided to the company, made business decisions for the company, participated in the drafting of periodic reports with the SEC, participated in hiring and other personnel decisions, and had discussions with individuals and firms involved in selling and marketing the stock of the company. In performing these functions, the defendant HESTERMAN exercised authority over individuals who were named officers and directors of PanWorld.

7.    The defendant HESTERMAN's title with PanWorld was "consultant." In fact, the defendant HESTERMAN exercised control and decision-making authority within PanWorld sufficient so that the failure to disclose his true role in the 1992 Form 10-K and the other periodic reports of the company was the omission of a material fact. Furthermore, in light of the defendant HESTERMAN's role with the company, the failure to report the defendant HESTERMAN's prior conviction on two counts of securities fraud was the omission of a material fact.

8.    The 1992 Form 10-K for PanWorld was filed with the SEC on or about June 1, 1993, and was thereafter supplied to shareholders of PanWorld and to broker-dealers and

6

registered representatives actively engaged in the sale of PanWorld stock.

9.    On or about June 1, 1993, in the Central Division of the District of Utah, the defendants

### ROBERT G. WEEKS and
### DAVID A. HESTERMAN

did willfully, directly and indirectly, and did aid, abet, counsel, command, induce and procure each other, by use of means and instrumentalities of interstate commerce and of the mails, (1) employ a device, scheme, and artifice to defraud; (2) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in acts, practices, and courses of business which would operate and did operate as a fraud and deceit upon any person in connection with the purchase and sale of a security, that is the common stock of PanWorld Minerals International, Inc.; in that the defendants, in the 1992 Form 10-K for PanWorld Minerals International, Inc., did omit to state material facts about the viability, operating costs and mineral reserves of Las Rosas mining property, did make untrue statements about the value of Las Rosas mining property, misrepresented the current status of the Europa Mill, and did omit to disclose the true role of the defendant HESTERMAN with the company and the defendant HESTERMAN's felony convictions; all in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-f, 15 U.S.C. § 78ff, and 18 U.S.C. § 2(a).

### COUNT III

1.    On or about March 3, 1993, the defendant WEEKS signed an agreement to acquire one-half of the assets of a placer mining project in Montana known as Washington

7

Gulch. The purchase price called for in the agreement was $5,555,000 consisting of: cash payments of $350,000, 2,500,000 shares of PanWorld preferred stock valued at $2.00 per share, 500,000 shares of restricted common stock and assumption of some liabilities. The preferred stock was arbitrarily and fraudulently valued by PanWorld at $2.00 per share.

2.      The agreement signed by the defendant WEEKS on behalf of PanWorld required a closing on or before March 30, 1993. By that time, certain documents were to be prepared, PanWorld stock was to be transferred to the sellers, and the liabilities to be assumed by PanWorld were to be calculated.

3.      The March 30, 1993 closing did not take place, title to the Washington Gulch assets never passed to PanWorld, and the conditions required to be met by March 30 were not accomplished. Discussions on that point were carried on between the attorney for the sellers and the defendant HESTERMAN, among others. As a result, on or about April 2, 1993, counsel for the sellers wrote a letter to the defendant WEEKS, stating that it was the position of the sellers that the agreement of March 3, 1993 was void, in part because there had never been a "meeting of the minds" regarding a term or terms of the March 3 agreement.

4.      The defendant WEEKS did not show the April 2, 1993 letter, which addressed to him taking the position that the March 3, 1993 agreement was void, to the accountant who prepared the unaudited financial statements included by PanWorld in its March 31, 1993 quarterly report to the SEC, the March 31, 1993 Form 10-Q.

5.      The financial statements included in PanWorld's March 31, 1993 Form 10-Q contained the Washington Gulch property/assets as an asset at $5,500,000. The defendant WEEKS signed the March 31, 1993 Form 10-Q as president of PanWorld.

8

6. Title to the properties/assets that PanWorld agreed to purchase in the March 3, 1993 agreement never passed to PanWorld because there was never a closing of the transaction. Furthermore, the sellers communicated to the defendant WEEKS that it was the sellers' position that the March 3 agreement was void. Therefore, it was fraudulent for PanWorld to include the Washington Gulch property/assets as an asset on the company's financial statements, even though there was a disclosure in the notes to the financial statements that there was a dispute about the sale.

7. The March 31, 1993 Form 10-Q for PanWorld was filed with the SEC on or about June 6, 1993, and was thereafter supplied to shareholders of PanWorld and to broker-dealers and registered representatives actively engaged in the sale of PanWorld stock.

8. On or about June 6, 1993, in the Central Division of the District of Utah, the defendants

ROBERT G. WEEKS and
DAVID A. HESTERMAN

did willfully, directly and indirectly, and did aid, abet, counsel, command, induce and procure each other, by use of means and instrumentalities of interstate commerce and of the mails, (1) employ a device, scheme, and artifice to defraud; (2) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engage in acts, practices, and courses of business which would operate and did operate as a fraud and deceit upon any person in connection with the purchase and sale of a security, that is the common stock of PanWorld Minerals International, Inc.; in that the defendants did state in the March 31, 1993

9

Form 10-Q for PanWorld Minerals International, Inc., that the company had acquired the Washington Gulch property/assets for a cost of $5,500,000, which the defendants did then and there well know was not true and correct; all in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. § 78ff, and 18 U.S.C. § 2(a).

COUNT IV

1.    The Grand Jury realleges and incorporates paragraphs 1. through 3. of Count I and paragraphs 1. through 7. of Count III of this Indictment as though fully set forth herein.

2.    At the conclusion of the calendar year 1993, PanWorld was required to obtain audited financial statements for inclusion in its 1993 annual report on a Form 10-KSB filed with the SEC. The defendant WEEKS signed this report as the principal executive officer, principal financial officer and a director.

3.    The officers and directors of PanWorld were required to provide all material transactions and information occurring in 1993 to the accountant auditing PanWorld's financial statements for 1993.

4.    Richfield International, Inc. (Richfield), Montague Metal and Machine, Inc. (Montague), Spring Creek Sand & Gravel, Inc. (Spring Creek), and Reserve Development Corporation (Reserve), were all defunct Nevada corporations, that were owned by Ward Blomquist and Karl Blomquist, Jr., who are brothers. Their father, Karl Blomquist Sr., was a consultant to the corporations.

5.    During the fall of 1993, WEEKS and HESTERMAN negotiated on behalf of PanWorld to purchase from Richfield 100 percent of the stock of Montague, Spring Creek and Reserve, and a license to manufacture mining equipment developed by Richfield. PanWorld

10

agreed to pay 1,000,000 preferred shares of PanWorld to Richfield, to loan of $500,000 to Richfield, and to assume $167,500 of Richfield's debts. WEEKS and HESTERMAN arbitrarily assigned a value of $6.00 for each preferred share given to Richfield making the purchase price $6,000,000 for the companies and the manufacturing license.

6.     Defendants WEEKS and HESTERMAN stated in PanWorld's 1993 annual report filed with the SEC that PanWorld had acquired from Richfield a minority interest of 25 percent of the Washington Gulch Placer Project near Helena, Montana. In PanWorld's 1993 annual report, they valued PanWorld's interest in Washington Gulch at $1,209,453. They knew that the written terms of PanWorld's October 31, 1993 contract with Richfield did not sell Richfield's interest, if any, in Washington Gulch to PanWorld. They knew that Richfield had no written agreement with the owners of Washington Gulch that gave Richfield rights, if any, to a 25 percent interest in Washington Gulch. Defendants WEEKS and HESTERMAN knew that the owners of Washington Gulch denied that Richfield had any interest in Washington Gulch that could be sold.

7.     Further, defendants WEEKS and HESTERMAN knew that the contract relied upon by PanWorld to transfer the interest in Washington Gulch did not transfer an interest in Washington Gulch because the purported interest in Washington Gulch was not held in any one of the corporation whose stock was purchased by PanWorld. This fact was obvious from the contract.

8.     On or about May 4, 1994, in the Central Division of the District of Utah and elsewhere

11

ROBERT G. WEEKS AND
DAVID A. HESTERMAN

did willfully, directly and indirectly, and did aid, abet, counsel, command, induce and procure

each other, by use of means and instrumentalities of interstate commerce and of the mails, (1)

employ a device, scheme, and artifice to defraud; (2) make untrue statements of material facts

and omit to state material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; (3) engage in acts, practices and

courses of business which would operate and did operate as a fraud and deceit upon any person

in connection with a purchase and sale of a security, that is the common stock of Pan World

Minerals International, Inc.; in that the defendants did state in the December 31, 1993 Form

10KSB for Pan World Minerals International, Inc., that the company had acquired a 25% interest

in the Washington Gulch placer project on October 31, 1993 from Richfield International, which

the defendants did then and there well know was not true and correct: all in violation of 15

U.S.C. § 78 j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. § 78 ff, and 18 U.S.C. § 2(a).

## COUNT V

1.      The Grand Jury realleges and incorporates paragraphs 1. through 3. of Count I of

this Indictment, paragraphs 1. through 7. of Count III of this Indictment, and paragraphs 1.

through 7. of Count IV of this Indictment as though fully set forth herein.

2.      Defendant TERRENCE DUNNE at times and material to this Indictment was a

certified public accountant from Spokane, Washington.

3.      Defendant TERRENCE DUNNE audited the financial statements included in

PanWorld's 1993 annual report.  DUNNE signed an audit opinion for the 1993 financial

12

statements stating his audit of PanWorld was done in accordance with generally accepted

auditing standards (GAAS) and the financial statements were presented in accordance with

generally accepted accounting principles (GAAP). However, DUNNE knew from the terms of

the October 31, 1993 contract that PanWorld acquired no interest in Washington Gulch, and

therefore, knew that the financial statements were not presented in accordance with GAAP.

DUNNE took no steps to satisfy the requirements of generally accepted auditing standards to

determine if the Washington Gulch interest were properly included in the PanWorld financial

statements, and the defendant DUNNE did not acquire competent evidential matter as required

by GAAS that showed the acquisition of the Washington Gulch interest by PanWorld on October

31, 1993.

4.      On or about May 4, 1994, in the Central Division of the District of Utah, and

elsewhere,

### TERRENCE DUNNE,

in a matter within the jurisdiction of the SEC, an independent agency of the Executive Branch of

the United States, did make a materially false, fictitious, and fraudulent statement and

representation in that the defendant TERRENCE DUNNE did certify that the financial

statements for Pan World Minerals International, Inc. for the year ending December 31, 1993

were presented in accordance with generally accepted accounting principles (GAAP), and

audited in accordance with Generally Accepted Auditing Standards (GAAS), when, as the

defendant then and there well knew, such was not the case; all in violation of 18 U.S.C. § 1001.

13

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

APPROVED:
STEPHEN J. SORENSON
First Assistant United States Attorney

STEWART C. WALZ
Assistant United States Attorney

14

AO 257 (Rev. 6/78)

PER 18 U.S.C. 3170

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION — IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  
Superceding

Name of District Court, and/or Judge/Magistrate Location (City)

**CENTRAL -- DISTRICT OF UTAH**

23 APR 99 PM 3 54

DISTRICT OF UTAH

BY:

DEPUTY CLERK

--- OFFENSE CHARGED ---

Failure to Disclose to an Accountant, Securities Fraud

☐ Petty  
☐ Minor  
☐ Misde-meanor  
☒ Felony

--- DEFENDANT — U.S. vs. ---

▶ **ROBERT G. WEEKS**

Address {

Place of offense  
Salt Lake County  
Central Division  
District of Utah

U.S.C. Citation  
15:78m ; 15:78J(b);  
15:78ff; 18:2(a), (b)

Birth Date {

☐ Male  ☐ Alien  
☐ Female  (if applicable)

(Optional unless a juvenile)

--- PROCEEDING ---

Name of Complaintant Agency, or Person (& Title, if any)

Patti Danks - IRS, Lance Edwards - FBI

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:  
☐ U.S. Att'y ☐ Defense

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

MAGISTRATE CASE NO.

--- DEFENDANT ---

**IS NOT IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding  
If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges  
If answer to (6) is "Yes", show name of institution

☐ Fed'l ☐ State

Has detainer been filed?  ☐ Yes  ☐ No

If "Yes" give date filed

Mo.  Day  Year

DATE OF ARREST ▶

Or... if Arresting Agency & Warrant were not Federal

DATE TRANSFERRED TO U.S. CUSTODY ▶

Mo.  Day  Year

Name and Office of Person Furnishing Information on THIS FORM  
**Paul M. Warner**  
☒ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)  
**Stewart C. Walz**

☐ This report amends AO 257 previously submitted

--- ADDITIONAL INFORMATION OR COMMENTS ---

Issue SUMMONS to subject at 3613 E. Brighton Point Drive, Salt Lake City, UT 84121.

2:98CR 0278S

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION — IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT Superceding

Name of District Court, and/or Judge/Magistrate Location (City)

CENTRAL -- DISTRICT OF UTAH

FILED

┌─ OFFENSE CHARGED

Failure to Disclose to an Accountant, Securities Fraud

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

DEFENDANT — U.S. vs. 28 APR 99 PM 3: 54

DAVID A. HESTERMAN DISTRICT OF UTAH
BY:
DEPUTY CLERK

Address {

Place of offense
Salt Lake County
Central Division
District of Utah

U.S.C. Citation
15:78m ; 15:78j(b);
15:78ff; 18:2(a), (b)

Birth
Date

☐ Male        ☐ Alien
☐ Female    (if applicable)

(Optional unless a juvenile)

─────── PROCEEDING ───────

Name of Complainant Agency, or Person (& Title, if any)

Patti Danks - IRS

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a represecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. Att'y ☐ Defense

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

SHOW
DOCKET NO.

MAGISTRATE
CASE NO.

─────── DEFENDANT ───────

IS *NOT* IN CUSTODY

1) ☐ Has not been arrested, pending outcome this proceeding
If not detained give date any prior summons
was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

☐ Fed'l ☐ State

Has detainer
been filed?

☐ Yes
☐ No

If "Yes"
give date
filed

Mo.        Day        Year

DATE OF
ARREST }

Or... if Arresting Agency & Warrant were not Federal

DATE TRANSFERRED }
TO U.S. CUSTODY

Mo.        Day        Year

Name and Office of Person Furnishing Information on THIS FORM

Paul M. Warner
☒ U.S. Att'y ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)

Stewart C. Walz

☐ This report amends AO 257 previously submitted

─────── ADDITIONAL INFORMATION OR COMMENTS ───────

Issue SUMMONS to subject at 3788 E. Millstream Drive, Holladay, UT 84109.

2:98CR 0278S

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION — IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
**Supercedng**

┌─ OFFENSE CHARGED ─────────────

**False Statement**

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

Place of offense
**Salt Lake County**
**Central Division**
**District of Utah**

U.S.C Citation
**18:1001**

─ Name of District Court, and/or Judge/Magistrate Location (City)

**CENTRAL -- DISTRICT OF UTAH**   FILED

─ DEFENDANT -- U.S. vs.   23 APR 99 PM 3:54

**TERRENCE DUNNE**   DISTRICT OF UTAH

Address { 
BY:
DEPUTY CLERK

Birth
Date

☐ Male  ☐ Alien
☐ Female  (if applicable)

(Optional unless a juvenile)

─ PROCEEDING ─

Name of Complainant Agency, or Person (& Title, if any)

**Patti Danks - IRS**

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrP 20, 21 or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
  ☐ U.S. Att'y ☐ Defense

**SHOW DOCKET NO.**

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under ▶

**MAGISTRATE CASE NO.**

Name and Office of Person Furnishing Information on THIS FORM
**Paul M. Warner**
☒ U.S. Att'y  ☐ Other U.S. Agency

Name of Asst. U.S. Att'y (if assigned)
**Stewart C. Walz**

─ DEFENDANT ─

**IS *NOT* IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
  If answer to (6) is "Yes", show name of institution

☐ Fed'l ☐ State

Has detainer been filed?  ☐ Yes  ☐ No

If "Yes" give date filed

DATE OF ARREST ▶   Mo.  Day  Year

Or... if Arresting Agency & Warrant were not Federal

DATE TRANSFERRED TO U.S. CUSTODY ▶   Mo.  Day  Year

☐ This report amends AO 257 previously submitted

─ ADDITIONAL INFORMATION OR COMMENTS ─

Issue SUMMONS to subject at South 5101 Sunward Drive, Spokane, WA 99203.

**2:98CR 0278S**