

FRANCIS M. WIKSTROM (3462)
H. DOUGLAS OWENS (7762)
PARSONS BEHLE & LATIMER
Attorneys for Kenneth Weeks
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, Utah 84145-0898
Telephone: (801) 532-1234

MAX D. WHEELER (3439)
RICHARD A. VAN WAGONER (4690)
ROBERT J. SHELBY (8319)
SNOW, CHRISTENSEN & MARTINEAU
Attorneys for Defendant David A. Hesterman
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>ROBERT G. WEEKS, et al.,<br><br>Defendants. | Case No. 2:98CR 0278ST<br><br>**REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE RELATING TO ROBERT CORDES AND FOR DISCOVERY**<br><br>Judge Ted Stewart<br>Magistrate Judge Ronald Boyce |

\* \* \* \* \* \* \*



363956.1

135

Defendants Kenneth L. Weeks and David A. Hesterman file this Reply In Support Of Their Motion To Suppress Evidence And For Discovery.

## I.     Defendants Have The Requisite Standing.

The Government contends that Defendants have no standing to object to any impropriety involved in the questioning of Mr. Cordes. Opp. Mem. at 3-4. Defendants do not dispute the general rule that "only the victims of the unconstitutional conduct may challenge the unconstitutional nature of the officer's actions." Clanton v. Cooper, 129 F.3d 1147, 1157 (10th Cir. 1997). Here, however, it is Defendants who have suffered the unconstitutional conduct -- the interview of Cordes in violation of the February 10, 1998 stay Order entered in the PanWorld civil matter -- which infringed Defendants' due process right to have the Government's and SEC's conduct conform to that Order. Cordes did not suffer this injury and he would lack standing to allege it.

Moreover, the Tenth Circuit in Clanton noted a separate type of constitutional protections that can justify exclusionary remedies, even where the constitutional infringement concerns a third party witness and only secondarily affects the defendant. Id. at 1157-58 (holding that defendant could challenge the prosecution's use of a coerced confession). See also United States v. Gonzales, 164 F.3d 1285, 1289 (10th Cir. 1999) (defendants could challenge admission of coerced statements; "Although defendants' rights were in no way affected by Lewis and Ainsworth obtaining the subject witness' statement, . . . subsequent use of those statements could potentially implicate defendants' due process rights."). Defendants do not assert that Cordes'

363956.1                                        2

statement was coerced in the sense used in the foregoing decisions, but the rationale of those decisions still applies because Cordes' statement was obtained unlawfully, as outlined below.

## II. The SEC and The Government Violated Defendants' Due Process Rights.

The Government also contends that there was no violation of any parallel proceeding doctrine or rule. Opp. Mem. at 4-8. The Government asserts that "Defendants point to no rule, regulation, statute or constitutional provision that was violated during the interviews of the witness Robert Cordes." Id. at 4. On the contrary, several such rules were cited by Defendants. For the sake of clarity, the violations of the SEC and the Government are considered separately.

### A. Conduct by the SEC.

The first rule violated by the SEC was the February 10, 1998 Order staying discovery in the PanWorld civil matter.[1] See Defendants' Memorandum ("D. Mem.") at 3-4, 12. The SEC is the plaintiff in that action, and it was fully bound by the stay. The Order stayed all proceedings in the PanWorld matter, and yet the SEC appended a document request to its subpoena that requested the production of "correspondence . . . that refers to, relates to, or reflects . . . PanWorld Minerals International, Inc." See D. Mem. at 7. Clearly the SEC should not have attempted further discovery on the PanWorld matter or sought to evade the terms of the stay.

---

[1] The violation of the Order staying discovery is effectively a violation of Defendants' right to due process. See Securities and Exchange Commission v. Gilbert, 79 F.R.D. 683, 687 (S.D.N.Y. 1978) (protective order staying civil discovery pending criminal prosecution "would be justified . . . under the Due Process Clause").

363956.1                                3

Remarkably, the Government offers no explanation whatever in its brief as to why the SEC asked Cordes for the production of documents related to PanWorld.

Defendants' opening brief also complained of document requests in the SEC subpoena calling indirectly for PanWorld documents by requesting documents related to Canyon Corporation. See D. Mem. at 7. The Government's response to this point does not withstand scrutiny:

> [T[he defendants assert, "The government cannot legitimately claim that Canyon had anything to do with Dynamic American." Bank records obtained from Mr. Cordes indicate that money was transferred from Canyon Corporation to the bank account of Stockton Ltd., one of the offshore entities used to receive profits from the Dynamic American stock. Furthermore, the United States, and presumably the Securities and Exchange Commission, can legitimately claim the entities are related because evidence showed that PanWorld Minerals and Dynamic American were controlled by or associated with the same individuals, specifically Robert Weeks, Kenneth Weeks, and David Hesterman. Furthermore, both Canyon and Stockton Ltd. were offshore entities that received proceeds of stock sales from either PanWorld or Dynamic American. The United States and the Securities and Exchange Commission were entitled to investigate the connection.

Opp. Mem. at 3.

The first part of the response, that "bank records obtained from Mr. Cordes" indicate that money was transferred from Canyon to Stockton, does not explain why the SEC requested the documents in the first place, because the SEC subpoena was issued <u>before</u> it had obtained the documents from Cordes, thus the subpoena was issued before it was known to the SEC that there was a transfer to investigate. Moreover, the transcript of the Cordes interview reveals that

363956.1  4

neither Achuff nor Hendrickson actually investigated this transfer, it being the subject of a single, perfunctory question by Hendrickson and none by Achuff.[2]

The rest of the Government's response quoted above makes generalized assertions concerning Dynamic American and PanWorld being "controlled by or associated with the same individuals" and that the Government and SEC were therefore entitled to "investigate the connection." This, like the previous assertion concerning the bank records obtained from Cordes, emits an odor of post hoc rationalization. As noted, the single point of "connection" pointed to by the Government was a single transfer of funds that was the subject of a single question from Hendrickson. The "connection" apparently was of no interest at all to Achuff and the SEC in the Dynamic American matter. When Achuff testified in the Dynamic American administrative proceeding, she did not mention any "connection" between PanWorld and Dynamic American. See Ex. 9, Achuff Testimony.

Significantly, Achuff's Declaration, attached as Exhibit 3 to the Government's Memorandum, distinctly indicates that Achuff issued the subpoena seeking the PanWorld documents for the (improper) purpose of investigating the PanWorld matter. Achuff states that she learned that Cordes was an officer of three Bahamian corporations that received PanWorld

---

[2] In the midst of a lengthy stream of questions concerning entries in banking records, Hendrickson asked: "[D]o you know why Stockton, Ltd. received $87,000 from the Canyon Corporation account?" Cordes answered: "No, I don't." Ex. 4, Cordes Transcript at 315. The question assumed the fact of the transfer into evidence, which Cordes never confirmed, and there was no follow up at all. Counsel was unable to find any other questions in the transcript relating to this transfer.

stock, and that she later learned that Cordes was connected to two other corporations which had received Dynamic American stock. Achuff Decl. ¶¶ 4-5. Achuff then explains: "Because of his [Cordes'] connection with offshore corporations that obtained stock from PanWorld and DAC [Dynamic American], both of which were subjects of Commission civil investigations and actions, I took steps to serve a Commission subpoena duces tecum on Cordes . . . ." Id. at ¶ 6 (emphasis added). Thus, Achuff never mentions a desire to investigate the supposed "connection" between Dynamic American and PanWorld cited in the Government's Memorandum, but rather she clearly indicates that her interest was to find out the information Cordes might have on "both . . . subjects of Commission civil investigations and actions." Id. Achuff's reference to "actions" is plural, thus clearly referring to the PanWorld civil injunctive action and the instant criminal action, since there are no other "actions." See also Ex. 9, Achuff Testimony at 1128 ("And so from the Commission's standpoint, Mr. Cordes could provide valuable testimony and documents relating to both PanWorld and Dynamic American."). Thus Achuff very nearly directly admits that her purpose in issuing the subpoena duces tecum to Cordes was to investigate not only Dynamic American, but also PanWorld, both civilly and criminally.

The SEC also violated the rules stated in Dresser Industries concerning good faith and bad faith investigations. "A bad faith investigation, in the Court's conception, is one conducted solely for criminal enforcement purposes." Dresser Industries, 628 F.2d at 1387 (citing United States v. LaSalle Nat'l Bank, 437 U.S. 298, 307-308, 316 and 316 n. 18 (1978)). Conversely,

363956.1                                     6

"[w]here the agency [the SEC] has a legitimate noncriminal purpose for the investigation, it acts in good faith under the LaSalle conception . . . ." Id. The SEC's conduct here fails this test. The use of an administrative subpoena in the Dynamic American matter to obtain Cordes's PanWorld and Canyon documents and then requiring him to appear pursuant to that subpoena for questioning concerning PanWorld and Canyon matters by both Achuff and Hendrickson was apparently "solely for criminal enforcement purposes," id., since those portions of the interview were not related to the Dynamic American matter and, by court-ordered stay, could not be used in the PanWorld civil matter.

The Government claims that LaSalle National Bank, the source of the foregoing rules, is distinguishable because "it deals with the statutory authority given to the Internal Revenue Service." Opp. Mem. at 7. LaSalle is not distinguishable on this basis because its holding was adopted and applied by the Dresser Industries court, as quoted above, and was applied to SEC cases. See Dresser Industries, 628 F.2d at 1386 (just prior to the above quoted language, the Dresser court states: "the reasoning of the Supreme Court in LaSalle . . . should govern this case").

### B. Conduct by the Government.

Most prominently, the Government's (i.e. Hendrickson's) receipt of documents from Cordes and interview of Cordes while using those documents violated the February 10, 1998 Order staying discovery. From the date that Order was entered, the Government should not have conducted any discovery relating to PanWorld other than through the grand jury or by means of

other mechanisms available through the criminal discovery process. The Government willingly received the benefit of the SEC's administrative subpoena issued in the Dynamic American matter by using the documents produced by Cordes solely pursuant to that subpoena. It may also be that the Government used the portion of the Cordes transcript containing the SEC's (Achuff's) questions in the grand jury.[3] Even assuming, for the sake of argument, that it was proper for the SEC to subpoena documents from Cordes and depose him based on those documents, it was not proper, based on the stay, for the <u>Government</u> to receive that information for use in this criminal proceeding.

Curiously, the Government claims that "[a]s Attachments 1 and 2 demonstrate, Cordes voluntarily provided records to the United States Attorney's Office and asked that other records requested by the United States Attorney's Office be provided to the U.S. Attorney's Office by the SEC." Opp. Mem. at 2. This statement lacks foundation. First, the U.S. Attorney's Office never requested any documents from Cordes; the only document production request given to Cordes was attached to the SEC's Dynamic American administrative subpoena; there was none attached to the PanWorld grand jury subpoena. <u>See</u> D. Mem. at 6. The Government has not disputed this. Second, Cordes testified that his documents were produced pursuant to the SEC subpoena. D. Mem. at 8; Ex. 4, Cordes Transcript at 22. Third, Government Exhibits 1 and 2 do

---

[3] The Government suggests that Defendants are questioning whether the wrongdoing described herein may have affected the grand jury. Opp. Mem. at 4. Defendants are not doing so at this time. Defendants would like (footnote continued on next page)

not establish that Cordes "voluntarily provided records to the United State Attorney's Office." Opp. Mem. at 2. On the contrary, the Cordes letter to the SEC attached as Exhibit 1 states that the documents were produced in compliance with the Dynamic American subpoena, with merely a "CC" to the U.S. Attorney. Opp. Mem. Ex. 1 ("The items enclosed comply with your [i.e. Achuff's Dynamic American] Attachment request for information on these companies . . ."). Both letters indicate that the records were provided to the SEC in the Dynamic American matter (both letters commence "Your file: Dynamic American Corp."). There is no indication anywhere in the letters that the document production was voluntary or that the documents were being produced at the request of the U.S. Attorney's Office. Finally, SEC agent Achuff's own Declaration, attached as Exhibit 3 to the Government's Memorandum, states that "I received documents from Cordes in response to the December subpoena." Achuff Declaration ¶ 7.

The Government's use in this PanWorld criminal case of the documents obtained by the SEC pursuant to its subpoena clearly violates Defendants' right to due process, as those rights were spelled out in the stay Order in the civil case. See supra n. 1. The only proper way for the Government to have received this information generated by Achuff would have been by seeking to lift the stay of discovery, which it did not do. Remarkably, the Government's Memorandum utterly fails to mention this stay, which was featured very prominently in Defendants' opening

---

(footnote continued from previous page)

discovery of what was presented to the grand jury to learn the extent of the Government's violation of the discovery stay in the PanWorld matter.

brief. D. Mem. at 3-4, 12-14. The Government has offered this Court no explanation as to why its actions did not violate the stay. Such a stay was warranted, as the Government's brief requesting it made clear. See D. Mem. at 13 (quoting the Government's brief) ("criminal . . . cases are susceptible to injury . . . by the use of civil proceedings to obtain unlimited discovery in an ongoing criminal case;" and also noting the "grave concern [of] the United States . . . [in] this case specifically, is that a defendant may attempt to use the liberal discovery and trial devices available in the civil action to circumvent the more restricted procedures regulating criminal discovery"). The Government was obligated to adhere to that stay and refrain from seeking or obtaining discovery for use in this case other than through the criminal process available in this case.

The second due process rule violated by the Government is the rule set forth in <u>Securities and Exchange Comm'n v. Dresser Industries, Inc.</u>, 628 F.2d 1368 (D.C. Cir. 1980). There the court stated that it is improper to use a related case to "expand the rights of criminal discovery beyond the limits of . . . Rule 16(b)." <u>Id.</u> at 1375-76. Here, the Government took advantage of the SEC's subpoena in Dynamic American to obtain documents and testimony based thereon for use in their criminal prosecution in the PanWorld matter. Such conduct flies in the face of the rule stated in <u>Dresser Industries</u>.

### III. Suppression Is The Appropriate Remedy.

The Government contends that, even if there was unconstitutional conduct associated with the Cordes interview, suppression is not the appropriate remedy. Opp. Mem. at 8-10. In

363956.1                                          10

support of its argument, the Government relies on United States v. Ceccolini, 435 U.S. 268 (1978). That case actually supports Defendants' position here. In Ceccolini, a police office discovered the identity of a witness and incriminating documents in an unconstitutional manner. The issue presented was whether the witness's testimony should be suppressed. The testimony was not suppressed because "[t]he evidence indicates overwhelmingly that the testimony given by the witness was an act of her own free will in no way coerced or even induced by official authority as a result of Biro's discovery of the policy slips [the unconstitutional act by the police]. Nor were the slips themselves used in questioning [the witness]." Id. at 279. These grounds for denying suppression are not present here. In Ceccolini, the only alleged unconstitutional conduct was the discovery of the witness. Here, Defendants do not complain of the manner in which the Government may have learned of Cordes as a potential witness. Defendants complain that Cordes was interviewed and required to produce documents in a manner that violated Defendants' due process rights. Unlike the witness in Ceccolini, Cordes did not testify of his own free will, but appeared pursuant to the subpoena; he also produced documents pursuant to the improper subpoena, and he was questioned with the aid of those documents. There is a direct and close link between the illegality in this case and the material for which suppression is requested. There is no question of the intervening free will of the witness, the lynchpin of the Supreme Court's decision in Ceccolini.

The Government complains that Defendants have not cited any case directly on point where suppression was granted. The Government's Memorandum similarly cites no cases

directly on point where suppression was denied. This case seems to be unusual. The facts of Afro-Lecon, Inc. v. United States, 820 F.2d 1198 (Fed Cir. 1987), however, are similar to those here in many important respects, and suppression was granted in that case. See D. Mem. at 14-15. The Government asserts, in attempting to distinguish Afro-Lecon, that "Mr. Cordes was a witness being interviewed with full knowledge of the roles of each interviewer." Opp. Mem. at 8. This is not correct. As noted in Defendant's opening brief, Achuff "posed" as a person interested in the administrative Dynamic American matter, but actually subpoenaed documents and spent substantial time questioning on matters relating solely to PanWorld. (As noted earlier, Achuff's Declaration evincing her intention to investigate both the Dynamic American and PanWorld matters.)

Suppression is also supported as the appropriate remedy by United States v. Gonzales, 164 F.3d 1285 (10th Cir. 1999), in which the Tenth Circuit held that "the courts have discretion to exclude evidence as a sanction for violation of a discovery order." Id. at 1291. Suppression is the only remedy that will protect Defendants from the SEC's and Government's circumvention of the stay of proceedings issued in the PanWorld matter.

## IV.  Disclosure of Grand Jury Testimony.

Defendants withdraw their argument concerning the possible disclosure of the Barbara Hesterman's grand jury testimony. See D. Mem. at 16. At the time the argument was filed, counsel for Defendants were unaware of the Declarations of Achuff and attorney Thomas Carter.

Defendants have recently become aware, however, of another incident that suggests a disclosure of grand jury testimony that relates to Cordes. Both the Declarations of Achuff and attorney Thomas Carter deny having read the transcript of Hendrickson's questioning of Cordes. Achuff Decl. ¶¶ 13; Carter Decl. ¶¶ 4, 5. Carter goes so far as to deny ever having seen the transcript of Hendrickson's questioning of Cordes, Carter Decl. ¶ 5, and he denies "any breach of the 'Chinese Wall' erected between the Commission's civil investigative staff and the criminal investigation with respect to Mr. Cordes' testimony." Id. ¶ 11. Counsel has recently learned however, that during the course of discovery in the Dynamic American administrative proceeding, the SEC produced to David Parsons, attorney in that matter for Defendants Kenneth Weeks and David Hesterman, a copy not only of the transcript of Achuff's questioning of Cordes, but also of a separate transcript of Hendrickson's questioning of Cordes. See first pages of these transcripts obtained from David Parsons attached hereto.[4] In the face of the denials put forth in the Achuff and Carter declarations, an explanation is warranted as to why the SEC even had a copy of the Hendrickson-Cordes transcript, especially since all concerned treated the Hendrickson portion of the Cordes interview as if it was part of the secret grand jury proceedings. Here again, Defendants need discovery on the issue of what exactly was presented to the grand jury concerning Cordes.

---

[4] In the discovery provided in the PanWorld criminal matter, the two transcripts ran together and appeared as one transcript.

## CONCLUSION

For the foregoing reasons, Defendants Hesterman and Kenneth Weeks request that the Court suppress any testimony that has or may be obtained from Robert Cordes, any documents obtained from him, or any other evidence of any sort derived from information the Government has obtained from him. Defendants initially requested that the Court delay a ruling on this Motion until after discovery has been obtained. Defendants believe that there is a sufficient basis at this time for an order suppressing the Cordes documents and Cordes as a witness. Defendants therefore withdraw the request for a delayed ruling.

Defendants remain unaware of exactly what documents were produced by Cordes, and request that the Government identify them. Defendants also are entitled, under the circumstances, to production of every subpoena (with all attachments) issued by the Government or SEC after the date of the stay relating to PanWorld or Dynamic American. Defendants renew their request for the items of information identified in the Conclusion in their opening memorandum, with the exception of item 9, which relates to the Barbara Hesterman issue, now withdrawn.

DATED this 13th day of October, 2000.

_____
FRANCIS M. WIKSTROM
H. DOUGLAS OWENS
PARSONS BEHLE & LATIMER
Attorneys for Defendant Kenneth L. Weeks

_____
MAX D. WHEELER
RICHARD A. VAN WAGONER
ROBERT J. SHELBY
SNOW, CHRISTENSEN & MARTINEAU
Attorneys for Defendant David A. Hesterman

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2000, I caused to be sent by first class mail a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE RELATING TO ROBERT CORDES AND FOR DISCOVERY** to:

Mr. Stewart C. Walz, Esq.
Assistant U.S. Attorney
Criminal Division
185 South State Street, Suite 400
Salt Lake City, Utah 84111

James N. Barber
Bank One, Suite 100
50 West Broadway
Salt Lake City, Utah 84101

Earl G. Xaiz
Yengich, Rich, Xaiz
175 East 400 South #400
Salt Lake City, Utah 84111

Ed Brass
321 South 600 East
Salt Lake City, Utah 84102

Delano S. Findlay
5350 South 925 East #E
Salt Lake City, Utah 84117

363956.1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:            )
                             )
DYNAMIC AMERICAN             )   File No. D-2049
CORPORATION                  )

WITNESS:   Robert E. Cordes

PAGES:     1 through 234

PLACE:     Board Room, Suite 3000
           Thanksgiving Tower
           1601 Elm Street
           Dallas, Texas

DATE:      Wednesday, January 27, 1999

The above-entitled matter came on for hearing at 9:00 a.m., pursuant to notice.

APPEARANCES:

On behalf of the Securities and Exchange Commission:

    CARLEEN H. ACHUFF
    Regional Geologist
    1801 California Street, Suite 4800
    Denver, Colorado 80202-2658
    (303) 844-1098

    LESLIE HENDRICKSON, ESQ.
    1801 California Street, Suite 4800
    Denver, Colorado 80202-2658
    (303) 844-1000

On behalf of the Witness:

    INDRAJIT "BOBBY" MAJUMDER, ESQ.
    Gardere & Wynne
    3000 Thanksgiving Tower
    Dallas, Texas 75201
    (214) 999-4268

DIVERSIFIED REPORTING SERVICES, INC.
(202) 296-2929

cordes.nn

Page 1

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

In the Matter of:            )
                             )
PAN WORLD MINERALS           )   File No. D-2049
INTERNATIONAL, INC.          )

WITNESS:    Robert E. Cordes

PAGES:      1 through 59

PLACE:      Board Room, Suite 3000
            Thanksgiving Tower
            1601 Elm Street
            Dallas, Texas

DATE:       Thursday, January 28, 1999

The above-entitled matter came on for hearing at 10:00 a.m., pursuant to notice.

APPEARANCES:

On behalf of the Securities and Exchange Commission:

   LESLIE HENDRICKSON, ESQ.
   1801 California Street, Suite 4800
   Denver, Colorado 80202-2658
   (303) 844-1000

On behalf of the Witness:

   INDRAJIT "BOBBY" MAJUMDER, ESQ.
   Gardere & Wynne
   3000 Thanksgiving Tower
   Dallas, Texas 75201
   (214) 999-4268

DIVERSIFIED REPORTING SERVICES, INC.
(202) 296-2929

cordes2.nn

Page 1

10/13/00 FRI 07:48 [TX/RX NO 5726]