

**FILED**

2000 DEC -1 P 6: 38

FRANCIS M. WIKSTROM (3462)
H. DOUGLAS OWENS (7762)
PARSONS BEHLE & LATIMER
Attorneys for Kenneth Weeks
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, Utah 84145-0898
Telephone: (801) 532-1234

MAX D. WHEELER (3439)
RICHARD A. VAN WAGONER (4690)
ROBERT J. SHELBY (8319)
SNOW, CHRISTENSEN & MARTINEAU
Attorneys for Defendant David A. Hesterman
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.  2:98CR 0278ST |
| vs. | **REBUTTAL  MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE RELATING TO ROBERT CORDES** |
| ROBERT G. WEEKS, <u>et al.</u>, | |
| Defendants. | Judge Ted Stewart<br>Magistrate Judge Ronald Boyce |

\* \* \* \* \* \* \*





374071.1

Defendants Kenneth L. Weeks and David A. Hesterman file this Rebuttal Memorandum in support of their Motion To Suppress Evidence Relating to Robert Cordes.

The Government's Brief On Relevance of PanWorld Information In Dynamic American Investigation, filed November 15, 2000, runs to 23 pages, including the new affidavit of Carleen Achuff (her third on this issue). The brief mostly fails to address the issue identified by the Court - the nexus, if any, between PanWorld and Dynamic American. The Government spends many pages discussing irrelevant issues such as defendants' alleged use of offshore corporations (separate corporations dealt with Dynamic American and PanWorld matters), Gov. Mem. at 7-8, Achuff Third Decl. ¶ 10-13; predictions about stock prices, Gov. Mem. at 9-10; the assertion that Dynamic American was initially a "shell" without actual operations, Gov. Mem. at 9-10, Achuff Third Decl. ¶ 5; and particular transactions that have to do only with either Dynamic American or PanWorld, but not both. Gov. Mem. at 8, Achuff Third Decl. ¶ 20-23. Even assuming the truth of these allegations, they do not establish any nexus between PanWorld and Dynamic American. The irrelevance of these assertions suggests an attempt to tarnish Defendants for no valid purpose, and it is noteworthy that many of the assertions are without support in the record save for Achuff's ipse dixit.[1] In at least one instance, the Government claims support in the record but the cited reference does not support the Government's characterization of it. See infra n. 4.

The Government raises only two issues that are on point. First, some of the people involved with PanWorld were also involved with Dynamic American (including "promoters"). Gov. Mem. at 5-6, 8, 10-11, Achuff Third Decl. ¶¶ 6-8, 14, 20. Nowhere in its lengthy allegations does the Government contend that the involvement of some of the same people in both PanWorld and Dynamic American matters led to any transactional involvement of the two matters. Instead, the Government attempts to show some transactional involvement by alleging that particular persons working in PanWorld offices may have on occasion used those offices for the conduct of Dynamic American business, Gov. Mem. at 6, Achuff Third Decl. ¶ 6, and that, on a single occasion, PanWorld letterhead was used to conduct Dynamic American business. Gov. Mem. at 11, Achuff Third Decl. ¶ 26.

The Government's description of the use of PanWorld's offices to conduct Dynamic American business is substantially exaggerated. Achuff's Third Declaration claims that "Bill Bosgraaf . . . testified that the defendants operated Dynamic American out of PanWorld's offices . . .". Achuff Third Decl. ¶ 6. Achuff does not say when Bosgraaf gave this testimony. A review of Bosgraaf's testimony at the Dynamic American administrative proceeding, given on July 13, 2000, reveals that Bosgraaf was asked to type some letters and perform similar secretarial-type tasks for Dynamic American, but he never testified that Dynamic American was

_____

(footnote continued from previous page)

[1] See e.g. Achuff Third Decl. ¶ 6 (unsupported assertion about lack of apparent source of income); ¶ 7 (unsupported assertion that "figurehead officers" were installed).

operated out of PanWorld's offices, nor does it appear that he could possibly, as a secretarial-type employee, have had adequate knowledge to testify as to this issue. As the attached Declaration of attorney Terry Turner indicates, Dynamic American was not in fact operated out of PanWorld's offices, but instead was substantially operated out of offices in Bolivia and California. Ex. 1, Turner Decl.

Similarly, Achuff exaggerates the incident in which the PanWorld letterhead was used.[2] Indeed, Achuff's declaration and the Government's brief frequently characterize the record in other proceedings but then fail to attach the referenced testimony or document. Achuff and the Government compound the failure by failing even to give citations to the record or, when there is a citation, it is frequently unintelligible.[3] In one of the few instances where a citation was given, the citation was erroneous.[4] Thus, neither the Defendants nor this Court can verify the Government's characterizations of the record. Such failures to provide obviously important information should be construed against the Government which, in the foregoing instances, has not fairly characterized the record.

---

[2] Achuff's Third Declaration claims PanWorld letterhead was used to send a fax conducting Dynamic American business. Achuff Third Decl. ¶ 26. Achuff never identified the fax. Defense counsel's review of the record reveals only a single fax that could fit the description Achuff gives, and this was in fact merely a PanWorld fax cover sheet that was used to transmit Dynamic American-related documents. See Cordes Testimony at 104 and exhibit 137 thereto (attached hereto as Exhibit 2).

[3] Unexplained references such as "DA 258-260" and "NIMS cert" appear throughout the brief.

[4] The Government's brief purports to characterize the testimony of Jethro Barlow. Gov. Mem. at 5. The citation to "Barlow at 29, 23-25" for the proposition that PanWorld was a "shell company without operations" is not supported by those pages of the Barlow investigative transcript. See Ex. 3, Barlow electronic transcript as provided by SEC in Dynamic American proceedings, at 22-25, 29.

The mere involvement of some of the same people in both Dynamic American and PanWorld matters, without more, does not support a nexus of the type required to justify the use of the Dynamic American subpoena to investigate PanWorld matters. Otherwise, the SEC would be entitled to investigate any transactions of the persons involved in Dynamic American.

The second nexus the Government proposes is that PanWorld considered selling two mining properties to Dynamic American but ultimately did not consummate the transactions. Gov. Mem. at 9, Achuff Third Decl. ¶¶ 15-19. The Government does not suggest that the contemplated transactions were to be anything other than transfers in exchange for adequate consideration, nor does the Government suggest that the transactions were not to be conducted at arm's length. In any event, according to the Government's own allegations, the transactions were not completed, so they hardly support the existence of any nexus. On the contrary, the Government's decision to cite the mere consideration of transactional involvement between PanWorld and Dynamic American is evidence that the Government cannot find any real nexus between the two.

As noted in Defendants' earlier memoranda, Achuff and Hendrickson-Hughes were not interested in exploring the foregoing issues when interviewing Cordes, nor was the SEC interested in these issues at the Dynamic American administrative hearing held in July 2000. They never asked Cordes questions relating to who controlled PanWorld or Dynamic American, nor were they interested in questioning Cordes about any contemplated transfers of mining properties or any other transactional involvement between Dynamic American and PanWorld.

See Defendants' Supplemental Memorandum In Support Of Their Motion To Suppress Evidence, filed November 15, 2000, at 6-7.  Thus the proposed nexus now proffered by the Government is not supported by the Cordes transcript.

The Government points out that the Cordes interview revealed that there were other "connections" between PanWorld and Dynamic American.  Gov. Mem. at 11-12, Achuff Third Decl. ¶¶ 24-27.  These are inconsequential and, taken in context, highlight the SEC's and Government's lack of interest in investigating any real connection.  These "connections" were discussed fully in Defendants Supplemental Memorandum, at 6-7.

The Government again suggests that Cordes voluntarily produced documents to it.  Gov. Mem. at 4.  This is not correct.  See Reply In Support of Motion To Suppress Evidence Relating To Robert Cordes, filed October 13, 2000, at 8-9.

## CONCLUSION

For the foregoing reasons, evidence obtained from Robert Cordes and evidence derived therefrom should be suppressed.

Respectfully submitted this 1ˢᵗ day of December, 2000.

FRANCIS M. WIKSTROM
H. DOUGLAS OWENS
PARSONS BEHLE & LATIMER
Attorneys for Defendant Kenneth L. Weeks

*Richard A. Van Wagoner /HDD*

MAX D. WHEELER
RICHARD A. VAN WAGONER
ROBERT J. SHELBY
SNOW, CHRISTENSEN & MARTINEAU
Attorneys for Defendant David A. Hesterman

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this ____ day of December, 2000, I caused to be sent by

first class mail a true and correct copy of the foregoing **REBUTTAL MEMORANDUM IN**

**SUPPORT OF MOTION TO SUPPRESS EVIDENCE RELATING TO ROBERT**

**CORDES** to:

Mr. Stewart C. Walz, Esq.
Assistant U.S. Attorney
Criminal Division
185 South State Street, Suite 400
Salt Lake City, Utah 84111

James N. Barber
Bank One, Suite 100
50 West Broadway
Salt Lake City, Utah 84101

Earl G. Xaiz
Yengich, Rich, Xaiz
175 East 400 South #400
Salt Lake City, Utah 84111

Ed Brass
321 South 600 East
Salt Lake City, Utah 84102

Delano S. Findlay
5350 South 925 East #E
Salt Lake City, Utah 84117

Richard A. Van Wagoner
Snow Christensen & Martineau
10 Exchange Place, 11th Floor
P. O. Box 45000
Salt Lake City, Utah 84145

1

FRANCIS M. WIKSTROM (3462)
H. DOUGLAS OWENS (7762)
PARSONS BEHLE & LATIMER
Attorneys for Kenneth Weeks
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, Utah 84145-0898
Telephone: (801) 532-1234

MAX D. WHEELER (3439)
RICHARD A. VAN WAGONER (4690)
ROBERT J. SHELBY (8319)
SNOW, CHRISTENSEN & MARTINEAU
Attorneys for Defendant David A. Hesterman
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
Telephone: (801) 521-9000

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:98CR 0278ST |
| vs. | **DECLARATION OF TERRY TURNER** |
| ROBERT G. WEEKS, et al., | Judge Ted Stewart |
| Defendants. | Magistrate Judge Ronald Boyce |

\* \* \* \* \* \* \*

I, Terry Turner, declare under oath as follows:

1.     I am over the age of 18 and competent to testify to the matters stated herein.

374571.1

2.   · I am an attorney and have been a member of the bar of the State of Utah since October 1980.   I represented PanWorld Minerals International as general counsel from approximately December 1989 through approximately January 1991.   I was legal representative for, and Bolivian counsel to, Dynamic American Corporation in Bolivia during 1995 and 1996.   I am currently president and CEO of Golden Eagle International, Inc., a mining company with offices in Salt Lake City and La Paz, Bolivia.

3.   I understand that the prosecution in the above-entitled action has made the assertion that Dynamic American was operated from the offices of PanWorld in Salt Lake City. This is not correct.   In fact, Dynamic American was principally operated from its offices in La Paz and Oruro, Bolivia, where it had 15 office employees, and from the offices of its president, Alan Burton, in Novato, California.   I personally observed that the core of Dynamic American's business was run out of its Bolivian offices and that only a minor amount of Dynamic American's business was conducted by persons out of their office in Salt Lake City.   I directed all of my correspondence from my office in La Paz to Mr. Burton in California.

4.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED this ___/²¹___ day of December, 2000.

_Terry C. Turner_
Terry Turner

374571.1

2

2

SENT BY:PANWORLD MINERALS INTL; 3-15-9?  10:19AM;            801261?965→        809 352 7932;# 1



**MINERALS INTERNATIONAL, INC**

*file Stockton Ltr*

## Fax Cover Letter

Date: _____

To: _____Bob Corres_____

Company: _____

Fax: ____(809) 352 - 3932_____

From: ____David H_____

Number of pages, including cover page: ___2___

Message: _____

_____ For docs sent by Felice 8/3/95

_____

If you need further information or if this fax was not received complete, please call at the telephone number listed below.

010770

4516 South 700 East Suite #260 • Salt Lake City, Utah 84107-8306 • 801-261-3888 • FAX 801-261-3965

48989

# Third Party Release

*To Whom It May Concern,*

*This is to certify that certificate number(s)* _____
*in the total amount of* __20,000__ *shares of* Dynamic American Corporation
*registered in the name of* Stockton Ltd. _____ *has been*
*duly endorsed by the registered holder of said shares and is now sole and exclusive*
*property of* _____ *and that the said* ____
_____ *, as owner of said stock, is entitled to dispose*
_____ *of the same as he/she/they may elect and derive all benefits from the same.*

Dated this ____ day of _____ , 19___ .


STOCKTON LTD.

Signed: _~D.A. Kent~_____
        D.A. Kent, President

Printed Name: _____

Address: _____

City, State & Zip Code: _____


Witnessed By: _~L. Turnquest~_____
              Lynn Turnquest, Secretary


010771

48930

C 229—Assignment Separate from Certificate.

JULIUS BLUMBERG, INC., LAW BLANK PUBLISHERS
80 EXCHANGE PLACE AT BROADWAY, NEW YORK

## STOCK POWER

FOR VALUE RECEIVED, _____ STOCKTON LTD. _____

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

hereby sell, assign and transfer unto _____

_____

( __5,000__ ) Shares of the_____Capital Stock of_____
    Dynamic American Corporation_____standing in my(our) name(s)

on the books of said Corporation represented by Certificate(s) No(s)_____

herewith, and do hereby irrevocably constitute and appoint_____

_____attorney to transfer the

said stock on the books of said Corporation with full power of substitution in the premises.

STOCKTON LTD.

Dated_____

Per: _D. N. _____ President

In presence of _L. Turnquest_____
_____ Secretary

ENDORSEMENT GUARANTEED
CANADIAN IMPERIAL BANK OF COMMERCE
FREEPORT, GRAND BAHAMA ISLAND
BAHAMAS
_____MANAGER

010772
48991

## CORPORATE RESOLUTION

**BE IT RESOLVED**, that D.A. Kent, the President acting individually, be and they are hereby authorized to sell, **assign**, transfer and/or deliver any and all stocks, bonds **or other** securities now or hereafter registered in the name of this Corporation.

I, ___Lynn Turnquest___ Secretary of ___Stockton Ltd.___ hereby certify that the foregoing is a true and complete copy of a resolution duly adopted by the Board of Directors of the said corporation at a meeting duly held on the _3rd_ day of _August_ , 19_95_ , at which a quorum was present and voting throughout, and that same has not been repealed or amended, and remains in full force and effect and does not conflict with the by-laws of said corporation.    I further certify that the President of the corporation is D.A. Kent and the following is a specimen of her signature.

Specimen signature of D.A. Kent_____

Date___August 3, 1995___        X _____
                                    (Secretary)

010773

48992

C 229—Assignment Separate from Certificate.

JULIUS BLUMBERG, INC., LAW BLANK PUBLISHERS
80 EXCHANGE PLACE AT BROADWAY, NEW YORK

# STOCK POWER

FOR VALUE RECEIVED, STOCKTON LTD.

*hereby sell, assign and transfer unto*_____

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

( 50,000 ) *Shares of the*_____ *Capital Stock of*_____

Dynamic American Corporation _____ *standing in my(our) name(s)*

*on the books of said Corporation represented by Certificate(s) No(s)*_____

*herewith, and do hereby irrevocably constitute and appoint*_____

_____*attorney to transfer the*

*said stock on the books of said Corporation with full power of substitution in the premises.*

STOCKTON LTD.

*Dated*_____

Per: _~R. R. K~_ 
President

*In presence of* _~signature~_ 
Secretary

ENDORSEMENT GUARANTEED
CANADIAN IMPERIAL BANK OF COMMERCE
FREEPORT, BAHAMAS

010774

48993

3

addresses that issue.

Q      Continuing on in Exhibit 11, item 4 asks for information regarding people who were employed by or were independent contractors to Dynamic American. Have you provided documents to the SEC that are responsive to that item?

A      Yes.

MR. BOYACK:  Let's just go off the record.

MS. SHIPMAN:  Let's go off the record.

MS. ACHUFF:  We're back on the record after a very brief break so that witness could confer with his counsel.  While we were off the record Mr. Barlow, did either Ms. Shipman or I have any discussion with you concerning your testimony or this investigation?

THE WITNESS:  No.

BY MS. ACHUFF:

Q      Okay, and you had a clarification?

A      I was going to say Dynamic American had no employees during this period of time and I was the -- and I provided information about myself, my arrangement was by contract with Dynamic, and I don't have any additional information in my possession.

Q      Okay, are you aware, besides yourself, was your brother Oliver Barlow a contractor to Dynamic American?

A      Barlow and Barlow.

Q      Through Barlow and Barlow?

A      Yes.

Q      Are you aware of any other independent

**barlow~1.txt**

**Page 22**

contractors to Dynamic American?

   A        Only through the resolutions that were sent to me.

   Q        Where it will say so and so provided services to the company?

   A        Yes.

   Q        Have you ever had in your custody, possession or control documents relating to services provided to Dynamic American by Stockton Ltd.?

   A        No.

   Q        Same question for Fernando Cordero.

   A        No.

   Q        Same question for Hamilton Ltd.

   A        No.

   Q        Same question for Terry C. Turner.

   A        No.

   Q        Same question for Wahoo International.

   A        No.

   Q        Do you know, have you ever seen any such documents, documents that would spell out, aside from Corporate Resolutions, documents that would spell out -- that would discuss consulting services to be provided by any one of those entities to Dynamic American?

   A        No.

        MS. ACHUFF:  And, if it would help you as we're going through this, I brought with me all the documents that were provided through Mr. Boyack on behalf of yourself, Oliver Barlow and Dynamic American.  If at any point you

**barlow-1.txt**

**Page 23**

want to look through these to find something or draw
attention to a particular document, feel free to do that.
I'll just put them here on the table.

       MR. BOYACK:  That's a big burden.
       MS. ACHUFF:  That's why they make wheelies.
       BY MS. ACHUFF:
  Q     Item 6 in Exhibit 11 asked for all lists of
shareholders of Dynamic American at any point in time.  Have
you provided documents to the SEC that are responsive to
item 6?
  A     Yes, I have -- I produced a copy of the
shareholders list that I had in my possession.
  Q     Just so that I'm sure which pages in your
production are responsive to this item, I'm showing you
pages that have been Bate stamped as DA00074 through DA00138
inclusive.  Is that the list that you're speaking of?
  A     Yes.
  Q     Now, when I look at this list, there is a list of
names and addresses and zip codes, but there is nothing to
show the share ownership of these people.
  A     That's all I had.
  Q     Okay, the date on the bottom left corner of each
of these pages is 11/23/94.  Does that mean that this would
be a shareholder list as of that date?
  A     I would presume that, I don't know.
  Q     Do you know who created this list?
  A     No.
  Q     How did you come to have it in your possession?

A        I don't recall.
Q        Do you know whether there was ever documents that
would show -- in your possession, documents that would show
the number of shares owned by each of the --
A        The only list that I ever had to that effect
would have been prior to the split and prior to the period,
the accounting period.
Q        The period as specified in the subpoena?
A        Yes, the subpoena period.
Q        So, do you have such a list?
A        Yes.
Q        Okay, and does that list have the shares, the
number of shares that each person holds?
A        Yes, and that would -- again, that would be prior
to the reverse split.
Q        Okay, now the pages that we're looking at here
were also dated prior to the reverse split, 11/23/94.  So
was -- that is the date that --
A        This list came into my possession during a period
of time that you specified, I thought it might be
interesting to you.
Q        Okay, and again, do you recall how it came to be
in your possession?
A        No.
Q        Have you ever seen a list of shareholders of
Dynamic American reflecting share ownership at any point
during the period as specified in Exhibit 11?
A        No.

**barlow~1.txt**

```
- pardon me there are three leading zeros -- and the second
page is 00030.  Is Exhibit 13 or the pages in Exhibit 13,
are those documents that you provided to the Securities and
Exchange Commission pursuant to subpoena?
                    (The documents referred to
               were marked for identification
               as Government Exhibit 13.)
   A        I think so.
   Q        And as I noted yesterday, I'm the one who put the
DA in front of the numbers on the original documents that we
received.  What is Exhibit 13?
   A        It says Capital Requirements Bolivian Tin
Project.
   Q        And the second page has a title Use of Proceeds?
   A        Yes.
   Q        Do you know who -- did you create Exhibit 13?
   A        No.
   Q        How did it come to be in the files of Dynamic
American?
   A        It was sent to me probably by fax.
   Q        Okay, and there seem to be remnants of fax line
on the upper edge of the page, do you know who wrote the two
pages of Exhibit 15?
   A        No.
   Q        Have you ever talked about these pages with
anyone?
   A        Only in the context of the dimensions of the
project in Bolivia, not specifically about these pages, no.
```